UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
UNITED STATES OF AMERICA                                    :
                                                            :
               -v-                                          :     09 Cr. 442 (WHP)
                                                            :
YUSUF ABDUR RAHMAN,                                         :
                                                            :
               Defendant.                                   :
                                                            :
------------------------------------------------------------x


## SENTENCING MEMORANDUM IN REPLY TO GOVERNMENT'S SENTENCING MEMORANDUM

Stephanie M. Carvlin
Counsel for Yusuf Abdur Rahman
111 Broadway, Suite 701
New York, New York 10006
212-748-1636

## ARGUMENT

## THIS COURT SHOULD NOT IMPOSE AN ENHANCEMENT FOR OBSTRUCTION OF JUSTICE

The government in its sentencing submission argues that Mr. Rahman committed perjury during his testimony at the suppression hearing and at trial and therefore urges this Court to enhance Mr. Rahman's base offense level by two levels pursuant to U.S.S.G. §3C1.1.[1] (Government's Sentencing Submission of November 4, 2010, at 18-21.) The preconditions for imposing a perjury-based obstruction enhancement are not met in this case, however.

The government cites the correct standard for assessing whether a defendant's Guidelines level should be increased for committing perjury. The District Court must make specific findings "that the defendant 1) willfully 2) and materially 3) committed perjury, which is (a) the intentional (b) giving of false testimony (c) as to a material matter." United States v. Zagari, 111 F.3d 307, 329 (2d Cir. 1997). According to the government, Mr. Rahman's testimony at the suppression hearing and at trial that the Human Resources Administration Bureau of Fraud Investigation ("BFI") agents who were investigating his case told him that he would not be arrested constitutes willful and material perjury. However, Application Note 2 to U.S.S.G. §3C1.1 directs a sentencing court when making this determination to "be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus,

---

[1] Guidelines Section 3C1.1 provides as follows: If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

1

not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." Additionally, an obstruction enhancement based on perjury "must be supported by a finding that the defendant's statements unambiguously demonstrate an intent to obstruct." United States v. Savoca, 596 F.3d 154, 159 (2d Cir. 2010). These findings must be made based on "clear and convincing evidence[.]" Id.

Viewed in this light, there is an insufficient basis for finding either that Mr. Rahman intentionally testified falsely or that he did so with the specific intent to obstruct justice. First, the circumstances in this case leave open the very real possibility that Mr. Rahman *believed* that he had been promised that he would not be arrested. Several uncontested facts in this case support this conclusion: Mr. Rahman met with BFI investigators and gave them information on three occasions before he was arrested: March 5, March 6 and March 20. Each time, he admitted his involvement in criminal conduct and yet was not arrested. Indeed, on March 5, Mr. Rahman disclosed what he had done in detail to Investigator Schaffroth. Mr. Rahman admitted that he had obtained Medicaid cards from recipients and then armed with a fake letter from the BOP went to doctors in different states and impersonated the individuals to obtain prescriptions that he filled and then sold. (Tr. at 138.) Having made those admissions, Mr. Rahman was allowed to go on his way with no more than an agreement that he would return the following day.

At the next meeting, which Mr. Rahman came to under his own power, he again made incriminating statements. (Tr. 166.) Again, he was permitted to leave, although he told the BFI agents that he was going on vacation out of state. Mr. Rahman came back to meet with agents again on a day of his choosing – March 20 – and reviewed over 50

prescriptions and took responsibility for having obtained them improperly. (Tr. at 172-176.) Again, Mr. Rahman was not arrested.

Under these circumstances, and given Mr. Rahman's history with law enforcement, including FBI agent John Casale, Mr. Rahman had some basis for believing that he would not be prosecuted for his involvement in this offense and would, instead, enter into some kind of agreement with HRA to provide them with his often-mentioned solution to the Medicaid-fraud problem.

Circumstances also suggest that Mr. Rahman did not testify falsely to obstruct justice – that is, to win his case. From his first contact with law enforcement through his testimony at trial, Mr. Rahman admitted the facts of this case: that he paid Medicaid recipients to use their information to obtain prescriptions he wasn't legally entitled to have.

The government argues that Mr. Rahman falsely stated that he was promised immunity from prosecution to win suppression of his statements. Admittedly, Mr. Rahman sought to suppress the statements he made on this basis. However, having lost his bid at suppression, Mr. Rahman still went to trial and <u>admitted</u> his guilt. Virtually the only point he made during his trial testimony (other than detailing the illegal actions he had committed) was that the agents had promised not to arrest him. These facts give rise to the inference that Mr. Rahman testified both at the suppression hearing and at trial out of a genuine (albeit misguided) sense of outrage at what he felt had been done to him. Indeed, all he could have hoped to attain from testifying at trial was to put the record straight – that is, bear witness to the wrong he believed had been done to him. In

his mind, the agents had lied to them, and he wasn't going to let them get away with that.

This view of Mr. Rahman's behavior – that he took actions based on a strongly-held but misguided belief that something was true when in fact it was not – is completely consistent with the conduct this Court witnessed from Mr. Rahman throughout the course of this prosecution. In light of these circumstances, it cannot be said that there is clear and convincing proof that Mr. Rahman intentionally lied to obtain some kind of advantage in this prosecution. The Court should not find that Mr. Rahman obstructed justice.

### POINT TWO

### MR. RAHMAN CONTINUES TO PRESS THE ARGUMENTS MADE IN HIS INITIAL SENTENCING SUBMISSION

This submission addresses only the issue that was not briefed in Mr. Rahman's initial sentencing submission: the applicability of the obstruction enhancement. Mr. Rahman continues to press all the other issues presented in his first sentencing memorandum.

Dated: November 5, 2010
New Orleans, LA

Respectfully submitted,

Stephanie M Carvlin
Counsel for Yusuf Abdur Rahman

cc: AUSA Rachel Kovner (via ECF)